Honorable Jim Hightower Commissioner of Agriculture P.O. Box 12847 Austin, Texas 78711
Re: Authority of the legislature to transfer funds from the Produce Recovery Fund Board into the General Revenue Fund (RQ-1377)
Dear Mr. Hightower:
An act of the 69th Legislature provided for the transfer of $337,348 from the Produce Recovery Fund (hereinafter "the fund") to the General Revenue Fund at the end of the 1986-1987 fiscal year. Acts 1986, 69th Leg., 3d C.S., ch. 16 (hereinafter "S.B. 6"). You ask whether the legislature had authority to make such transfer.
The Produce Recovery Fund is a "special trust fund" established by Acts 1977, 65th Legislature, chapter 386 (now chapter 103 of the Agriculture Code) for the payment of claims against commission merchants and retailers licensed by the Department of Agriculture to "handle" vegetables and citrus fruit under chapters 101 and 102 of the code. The fund provisions replaced a prior requirement that licensees be bonded. The fund is maintained "with the state treasurer" and "administered by the department, without appropriation." License renewal fees and late license renewal fees under sections 101.008 and 102.008, fees levied against licensees specifically for the fund under section 103.001, and fifty percent of penalties assessed under sections 101.020, 102.021 and 103.013, go into the fund. Interest earned on such money stays in the fund. Section 103.002(e). Section 103.009 provides that if the department pays from the fund a claim against a licensee, the licensee shall reimburse the fund on a schedule to be determined by rule of the department. Section 103.002(d) provides that no more than ten percent of the fund may be expended in any year for administration of the claims process.[1]
According to information given in your request, the $337,348 dollars transferred from the fund by S.B. 6 was part of an approximate $525,000 surplus remaining in the fund at the end of the 1986-1987 fiscal year. Section 103.008 provides in subsection (e):
 Payments from the fund during a fiscal year may not exceed the amount of money deposited into the fund during that fiscal year, except that surplus funds remaining at the end of each fiscal year are available for the payment of claims during any succeeding year.
Section 1 of Senate Bill 6, however, provided in part that "this Act supersedes any law restricting the expenditure of [the transferred funds] to a particular purpose."
The Produce Recovery Fund is not a "constitutional fund," and is thus not subject to the provision of Texas Constitution article VIII, section 7 that "[t]he legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury." Gulf Ins. Co. v. James, 185 S.W.2d 966 (Tex. 1945); Brazos River Conservation and Reclamation District v. McCraw, 91 S.W.2d 665
(Tex. 1936).
Your request letter and the letter we have received from the Comptroller's office in connection with your request both suggest that resolution of the question whether the Produce Recovery Fund is in fact a "trust fund" should be dispositive of your question as to the propriety of the Legislature's diversion of the $337,348 from the fund to the General Revenue Fund.
However, as Attorney General Opinion JM-539 (1986) stated:
 [E]ven in the case of a statutory trust fund, the Texas Supreme Court has ruled that, so long as no vested right is impaired, an amendment that serves to alter or reduce a benefit heretofore granted by statute is permissible. (Emphasis added.)
See, City of Dallas v. Trammel, 101 S.W.2d 1009 (Tex. 1937). See also Woods v. Reilly, 218 S.W.2d 437 (Tex. 1949); Board of Managers of the Harris County Hospital District v. Pension Board of the Pension System for the City of Houston, 449 S.W.2d 33
(Tex. 1970); Devon v. City of San Antonio, 443 S.W.2d 598
(Tex.Civ.App.-Waco 1969, writ ref'd); and Attorney General Letter Advisory No. 5 (1973).
Clearly, no vested rights will have been impaired by the S.B. 6 diversion unless and until the fund is actually depleted, and then only to the extent that the fund's depletion and consequent insufficiency for meeting claims is attributable to the diversion of fund moneys by S.B. 6.[2] Your request letter indicates, however, that the fund is still viable, having a balance of approximately $141,600 as of March 8, 1988, the date of your request.
Neither your request nor the comptroller's letter discuss whether any vested rights have been or will be impaired by the S.B. 6 diversion.
Given the highly speculative nature of any argument that actual claimants' rights might eventually be impaired by virtue of the S.B. 6 transfer, we decline to hypothesize circumstances under which such impairments might occur or to rule whether the S.B. 6 transfer was unlawful as a result of such at present only potential impairments of vested rights.
You also ask:
 If the legislature does have the authority to make such a transfer, and the Fund is depleted, what is the Board's responsibility as to the awarding of payment on valid claims?
The board you refer to is the Produce Recovery Board, which has the duty of advising the department on "all matters relating to the fund" and of conducting hearings on disputed claims. Sections 103.003 et seq.
We have difficulty discerning any legal issues presented by your second question. Particularly under the circumstances assumed by your question, that the S.B. 6 transfer was lawful — i.e. that no vested rights have been or will be impaired — we do not believe that the board's legal "responsibilities" are altered by virtue of the S.B. 6 transfer.
Even apart from the operation of S.B. 6, there is no guarantee under the statutory scheme of chapter 103 that the fund will not be depleted. Your request letter indicates, for example, that for the fiscal year 1987-1988 up to the date of your letter (March 1, 1988) $47,422.75 had come into the fund while $99,396.05 had been paid out. It is obvious that such a revenue shortfall vis a vis expenditures is not the result of the diversion of funds under S.B. 6, but is a result, rather, of the statutory scheme of chapter 103 which makes no provision to assure that the fund has sufficient revenues to meet claims and administrative expenses.
The Department of Agriculture acting on the advice of the board appears to have broad rule making authority under section 103.004 for confronting such cash flow difficulties by reducing the amounts paid out in claims under section 103.008. The latter section generally only sets ceilings on such payouts on claims. Amounts or percentages of claims to be paid out could, we think, be reduced by administrative rule.
Also, the department may seek, via its rule making authority under section 103.009 and perhaps by more diligent efforts generally, to increase the amounts obtained in reimbursements under that section.
Whether appropriations should be made to replenish the fund if depleted is of course a matter within the purview of the legislature.
 SUMMARY
The transfer of $337,348 from the Produce Recovery Fund to the General Revenue Fund by operation of Senate Bill 6, 3rd Called Session, 69th Legislature, was lawful so long as it did not impair any vested rights. The transfer might result in impairment of vested rights of certain claimants, if the transfer results in depletion of the Produce Recovery Fund such that their claims cannot be paid. That any vested rights will be impaired is, however, only a hypothetical possibility since the fund is at present still viable.
S.B. 6 did not alter the legal responsibility of the Produce Recovery Board in administering the fund.
Whether appropriations should be made to replenish the fund if depleted, is of course a matter within the purview of the legislature.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by William Walker Assistant Attorney General
[1] You do not ask, and we do not address, any question as to the constitutionality of the Produce Recovery Fund.
[2] Even apart from the operation of S.B. 6, there is no guarantee under the statutory scheme of chapter 103 that the fund will not be depleted. See the discussion below of your second question.