Opinion issued September 12, 2003





                            






In The
Court of Appeals
For The
First District of Texas
_______________________

NO. 01-99-01361-CV
_______________________

ELMER F. WILLIAMS II, Appellant

V.

HOUSTON FIREMEN’S RELIEF AND RETIREMENT FUND,


 DONNY R.
MEYERS, GEORGE E. LOUDERMILK, MAXIE R. PATTERSON,
D. GRADY PERDUE, AND THE CITY OF HOUSTON, Appellees




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 97-09970




OPINION ON REHEARING

          Appellant, firefighter Elmer F. Williams II, appeals a take-nothing judgment
rendered after the trial court denied Williams’s motions for partial summary judgment
and granted (1) the summary judgment motions of the Houston Firemen’s Relief and
Retirement Fund (the Fund) and the individual appellees, who were the Fund’s board
members (collectively, “the trustees”), and (2) the summary judgment motions and
dismissal motion of appellee the City of Houston (“the City”). We issued our original
opinion in this appeal on December 27, 2001. Appellant moved for rehearing, as did
the Fund and the trustees. We grant Williams’s motion for rehearing. We deny the
Fund’s and trustees’ motion as moot. The Court’s prior opinion and judgment of
December 27, 2001 are vacated, set aside, and annulled, and this opinion and judgment
are issued in their stead. We modify the judgment and affirm as so modified.
FACTUAL AND PROCEDURAL BACKGROUND
          Williams joined the Houston Fire Department (“HFD”) and the Fund in 1990,
after six years and five months of service with two other cities’ fire departments,
neither of which had statutory firefighters’ retirement funds like Houston’s. In 1995,
Williams sought to purchase prior service credit (“PSC”) under the firemen’s
retirement-fund statute (“the retirement statute”) for these six years and five months
of service, to be applied toward his retirement with HFD. The PSC provision of the
former retirement statute, section 30, provided:
A firefighter who transfers from the fire department of one
city to that of a city covered by this Act and desires to
participate in the fund of that city shall: . . . [meet three
requirements, including paying “into the fund of that city an
amount equal to the total contribution he would have made
had he been employed by that city instead of the city from
which he transferred.”].




The statute was silent as to whether the city from which the firefighter transferred had
to have a fund. While Williams’s request was pending, the Fund adopted guidelines
construing section 30: years worked outside Houston could be credited towards
retirement only if the former city had a similar statutory firefighter’s fund. (The
parties refer to this interpretation by the Fund and the trustees as “the guidelines,” and
so do we.) Applying the guidelines, the Fund denied Williams’s PSC request in
January 1997. The reason for that denial was that the cities in which Williams had
worked before did not have firefighters’ retirement funds similar to Houston’s.
          Subsequently, the Legislature repealed article 6243e.2 and replaced it with
article 6243e.2(1). Article 6243e.2(1), the current retirement statute, restated and
amended former article 6243e.2, the former retirement statute, and continued in effect
each firefighter’s relief and retirement fund established under that article.


 The PSC
provision of the current retirement statute, section 16(a), provides:
A person who becomes a firefighter in a municipality to
which this article applies may receive service credit for
prior employment with the fully paid fire department of
another municipality in this state with a similar fund
benefitting only firefighters of that municipality to which
the firefighter contributed if . . . [the firefighter meets five
requirements].”



The Fund and the trustees interpreted the first sentence of former section 30(a) to
mean what the italicized portion of current section 16(a) now expressly says. 
          Williams I
          That same year, Williams sued the Fund in district court, alleging statutory and
constitutional claims and challenges to the Fund’s guidelines and its PSC
determination. On the Fund’s motion,


 the trial court dismissed all of Williams’s
claims against the Fund, without prejudice, for lack of subject matter
jurisdiction—except (1) his constitutional claims and (2) his challenge that the Fund’s
ruling was barred by res judicata, claim preclusion, issue preclusion, waiver, estoppel,
and collateral estoppel. Williams appealed the dismissal order. On interlocutory
appeal, we affirmed, holding that the trial court had neither “appellate”


 nor original
jurisdiction to consider the dismissed claims until 2003, the earliest possible date
Williams might be “eligible for retirement.” Williams v. Houston Firemen’s Relief &
Ret. Fund, No. 01-98-00681-CV, slip op. at 5-14 (Tex. App.—Houston [1st Dist.] 
Feb. 11, 1999, no pet.) (op. on reh’g) (not designated for publication) (hereinafter
“Williams I”). 
          Williams II
          Williams subsequently added the City and the four trustees, in their individual
and official capacities, as defendants. He also added common law claims against all
defendants. The Fund filed supplemental motions for traditional rule 166a(c)
summary judgment; the trustees moved for 166a(c) summary judgment and
incorporated the summary judgment grounds alleged by the Fund; the City moved to
dismiss for lack of subject matter jurisdiction or, alternatively, for rule 166a(c)
summary judgment; and Williams moved for rule 166a(c) partial summary judgment.


 
          By the time all summary judgment and dismissal motions were considered,
Williams was asserting the following claims and challenges:
Challenges to the Merits of the Guidelines and The Fund’s and the
Trustees’ PSC Determination
 
1.The Fund and the trustees misconstrued section 30 of the former
retirement statute;
 
2.No or insufficient evidence supported the Fund and the trustees’
PSC determination;
 
3.The Fund and the trustees’ PSC determination was not supported
by substantial evidence; and
 
4.The Fund’s PSC determination was barred by res judicata, claim
preclusion, issue preclusion, waiver, estoppel, and collateral
estoppel.
 
Constitutional Claims
 
1.The Fund’s guidelines and the trustees’ application of them
exceeded their statutory authority;
 
2.The former retirement statute unconstitutionally delegated
governmental authority to the Fund;
 
3.The Fund’s guidelines and the trustees’ PSC determination were
an unlawful and unconstitutional retroactive application of the law
that adversely affected Williams’s vested property right to PSC;
 
4.The Fund’s guidelines and the trustees’ application of them were
an unconstitutional local or special law;
 
5.As applied, the guidelines denied Williams equal protection under
the state constitution; and
 
6.The Fund’s and the trustees’ PSC determination violated
substantive due process.
Common Law Claims



1.The trustees and the City fraudulently concealed from Williams or
misled him about his right to purchase PSC, which acts were also
breaches of their fiduciary and good-faith-and-fair-dealing duties;
 
2.All defendants conspired to construe the PSC statute against
Williams, to withhold material information from and mislead him
(presumably about the right to purchase PSC), to breach their
fiduciary and good-faith-and-fair-dealing duties to him, to conceal
those breaches from him, and “to refuse to act in his best
interests”; and 
 
3.The above acts of “conspiracy” also constituted fraudulent
misrepresentation, fraudulent concealment, and breaches of the
defendants’ fiduciary and good-faith-and-fair-dealing duties.

Williams sought compensatory and punitive damages, declaratory relief, pre- and post-judgment interest, attorney’s fees, and costs.
          The trial court granted the Fund’s and the trustees’ summary judgment motions;
granted the City’s motion to dismiss or, alternatively, for summary judgment; denied
Williams’s motions for partial summary judgment; and rendered a take-nothing
judgment against Williams. Williams appealed, asserting that the district court had
subject matter jurisdiction over all his statutory, constitutional and common law claims
under the retirement statute, the Texas Trust Code,


 and its inherent constitutional
powers; that the trustees and the City were not immune from his common law claims;
that the Fund and the trustees were barred from changing their interpretation of the
guidelines by res judicata, stare decisis, and collateral estoppel; and that he was
entitled to judgment on the merits of his statutory, constitutional, and common law
claims.
 
          In our previous opinion in this appeal, we declined to revisit our holding in
Williams I that the former retirement statute did not provide for review of the issues
raised by Williams’s suit. Williams v. Houston Firemen’s Relief and Ret. Fund, No.
01-99-01361-CV (Tex. App.—Houston [1st Dist.] Dec. 27, 2001, no writ) (not
designated for publication) (hereinafter “Williams II”). We again held that the
retirement statute’s express language permits judicial review of a member’s challenges
to the Fund’s action only when the member is eligible for retirement or disabled. See
id., slip op. at 5-8. Since Williams was not then eligible for retirement, we held that
his statutory claims were not ripe, despite his having exhausted his administrative
remedies. Since ripeness is a prerequisite for justiciability, we further held that none
of Williams’s other claims—which derived from his statutory claims—were ripe. We
therefore granted the Fund’s jurisdictional plea, reformed the trial court’s judgment
to correspond to our ruling, and, as modified, affirmed. See Williams II, slip op. at 5-8, 12-14. Williams’s and the Fund’s and trustees’ motions for rehearing followed. 
          Rehearing
          On rehearing, we withdraw our opinion of December 27, 2001 and issue this
opinion in its stead. We hold that Williams has no statutory right to judicial review
of his claims. However, Texas law recognizes a right to judicial review of
administrative orders that violate a constitutional right. We hold that Williams has
standing to raise his constitutional claims, but those claims are without merit. We
further hold that the City is immune to Williams’s Trust Code and common law claims
under the doctrine of sovereign or governmental immunity and that the trustees are
immune under the doctrine of official immunity. We reform the judgment to reflect
dismissal of all claims over which the district court lacked jurisdiction and, as
modified, affirm. 
STANDARDS OF REVIEW
          We follow the usual standard of review for a summary judgment order that
specifies no grounds, denies one party’s rule 166a(c) motion, and grants the other
parties’ rule 166a(c) motions. See Tex. R. Civ. P. 166a(c); Bradley v. State ex rel.
White, 990 S.W.2d 245, 247 (Tex. 1999); Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997). Summary judgment under rule 166a(c) is proper only
when a movant establishes that there is no genuine issue of material fact and that he
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to
summary judgment if the evidence disproves as a matter of law at least one element
of each of the plaintiff’s causes of action or if the evidence conclusively establishes
all elements of an affirmative defense. Id.
 
          When all parties move for summary judgment and the trial court grants some
motions and denies others, we can consider all motions, their evidence, and their
issues and may render the judgment that the trial court should have rendered. See CU
Lloyd’s v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998). When an order granting
summary judgment does not specify the grounds upon which the trial court ruled, we
must affirm to the extent that any of the summary judgment grounds is meritorious. 
See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995). 
          To the extent the trial court dismissed Williams’s claims for want of
jurisdiction, we construe Williams’s pleadings in his favor and look to his intent. Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). We review
the trial court’s grant of a plea to the jurisdiction de novo. Lukes v. Employees Ret.
Sys. of Texas, 59 S.W.3d 838, 841 (Tex. App.—Austin 2001, no pet.).
SUMMARY JUDGMENT FOR THE FUND
AND THE TRUSTEES

          We first address Williams’s jurisdictional issues, which we divide into two
categories: (1) district court jurisdiction to review the Fund’s decision and related
claims and (2) original district court jurisdiction over Williams’s claims.
 
 
Judicial Review of Administrative Decisions
          Statutory Right of Judicial Review
          In Williams I, we held that the retirement statute did not authorize judicial
review of the guidelines (i.e., the Fund’s interpretation of former retirement statute
section 30) or of the trustees’ decision to deny Williams’s PSC request because
Williams was not “disabled” or “eligible for retirement.” Id., slip op. at 5-14. We
reaffirm that holding.
          The Fund’s board is “in the nature of a public administrative body.” 
Herschbach v. City of Corpus Christi, 883 S.W.2d 720, 728 (Tex. App.—Corpus
Christi 1994, writ denied). Texas law recognizes a right to judicial review of an
administrative order only if (1) a statute provides the right, (2) the order adversely
affects a vested property right, or (3) the order otherwise violates a constitutional right.
Gen. Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 599 (Tex. 2001); see
also Cont’l Cas. Co. v. Functional Restoration, 19 S.W.3d 393, 404 (Tex. 2002).


 
We first consider the Fund’s jurisdiction and then the statutory right of judicial review
of Fund actions.



          The Fund’s jurisdiction under both current article 6243e.2(1) and repealed
article 6243e.2 is broad. The retirement statute expressly grants the managing board
of the Fund the powers, inter alia, to:
 
(1)adopt for the administration of the fund written rules and
guidelines not inconsistent with this article;
 
(2)interpret and construe this article and any summary plan
descriptions or benefits procedures, except that each construction must
meet any qualification requirements established under section 401 of the
[Internal Revenue Code].
 
(3)correct any defect, supply any omission, and reconcile any
inconsistency that appears in this article in a manner and to the extent
that the board considers expedient to administer this article for the
greatest benefit of all members;
 
. . .
 
(5)determine all questions, whether legal or factual, relating to
eligibility for participation, service, or benefits or relating to the
administration of the fund to promote the uniform administration of the
fund for the benefit of all members . . . .

Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(1)-(3), (5) (Vernon 2003)
(previously former Tex. Rev. Civ. Stat. Ann. art. 6243e.2, § 2(j)(5)).
          The Fund claims that it had exclusive jurisdiction over Williams’s claims. We
agree. An agency has exclusive jurisdiction “when a pervasive regulatory scheme
indicates that [the Legislature] intended for the regulatory process to be the exclusive
means of remedying the problem to which the regulation is addressed.” Subaru of
America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002)
(quoting Andrew G. Humphrey, Comment, Antitrust Jurisdiction & Remedies in an
Electric Utility Price Squeeze, 52 U. Chi. L. R. 1090, 1107 n.73 (1985)). “[U]nder the
exclusive jurisdiction doctrine, the Legislature grants an administrative agency the
sole authority to make an initial determination in a dispute.” Id. Article 6243e.2(1),
like its predecessor, is a “pervasive regulatory scheme,” governing the establishment
and administration of a “Firefighters’ relief and retirement fund in municipalities of
at least 1,600,000 population.” Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1). Both
Williams’s cause of action and its remedy derive from the statute. When, as here, a
cause of action and remedy for its enforcement are derived from statute, the statutory
provisions for review are mandatory and exclusive. See id. at 221-22. If an agency
has exclusive jurisdiction over a matter, the courts lack subject matter jurisdiction until
administrative remedies are exhausted and must dismiss the claims within the agency’s
exclusive jurisdiction. Id. at 221. When exhaustion is required, courts have only
limited review of the administrative action. Id. That is the case here.
          The retirement statute provides for judicial review of Fund decisions as follows:
Sec. 2. . . . (j) Each decision of the [Fund’s] board in a matter under the
board’s jurisdiction is final and binding as to each affected firefighter,
member, and beneficiary, subject only to the rights of appeal specified by
this article.
 
. . .

Appeals of benefit decisions
 
Sec. 12. (a) A member who is eligible for retirement for length of
service or disability or who has a claim for temporary disability, or any
of the member’s beneficiaries, who is aggrieved by a decision or order of
the [Fund’s] board, whether on the basis of rejection of a claim or of the
amount allowed, may appeal from the decision or order of the board to
a district court in the county in which the board is located by giving
written notice of the intention to appeal . . . .

Id. §§ 2(j), 12(a) (Vernon 2003).



          Williams reads section 2(j) to allow judicial review of any board decision,
presumably because the decision is “final,” concluding that section 12(a) merely
specifies procedures for review of Fund decisions for two non-exclusive classes of
appellants (those eligible for retirement or with temporary disability). Williams also
argues that section 12(c)—which allows the court to consider evidence not in the
administrative record—implies a right of immediate judicial review, because evidence
could be lost in the years between the denial of a firefighter’s service credit request
and his retirement. See id. § 12(c) (Vernon Supp. 2003). The Fund reads section
12(a) as the only provision providing for judicial review. Accordingly, the Fund
argues that Williams may not challenge its credit decision until at least 2003, the
earliest possible date he would be “eligible for retirement,” as described in section
12(a).



          While section 2(j) makes the board’s decisions final, it expressly makes those
decisions “subject only to the rights of appeal specified by this article.” Id. § 2(j). 
Section 2(j) does not expressly authorize appeals. Additionally, not every final
administrative decision is reviewable by a court. See, e.g., Harris v. Civil Serv.
Comm’n for Mun. Employees of the City of Houston, 803 S.W.2d 729, 730 (Tex.
App.—Houston [14th Dist.] 1990, no writ); Pruitt v. City of Houston, 548 S.W.2d 90,
93 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ). 
          We agree with the Fund that, under the plain language of the Act, the only
section allowing a right of judicial review is section 12(a), which limits the statutory
right of appeal of Fund decisions to aggrieved “members” who are “eligible for
retirement” for length of service or disability or have a claim for temporary disability
and any of these members’ beneficiaries. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1),
§ 12(a). Moreover, as indicated by the caption of section 12 (“Appeals of benefit
decisions”) and by the plain language of that section, the statutory right of judicial
review of Fund decisions is further limited to review of benefit decisions regarding the
“rejection of a claim or of the amount allowed.” Id. Article 6243e.2(1) on its face does
not allow judicial review of the Fund’s credit determination until Williams meets
section 12(a)’s requirements. The fact that evidence might be lost, as Williams
contends, does not change the text of the statutes.
           Accordingly, we overrule Williams’s jurisdictional issue to the extent he argues
that the district court had jurisdiction under the retirement statute to review the Fund’s
and trustees’ decisions. We turn next to whether the Fund’s action is beyond its
statutorily conferred powers, deprives Williams of vested rights, or otherwise violates
a constitutional provision and is thus subject to judicial review in the absence of a
statutory right of review. See Little-Tex, 39 S.W.3d at 599; City of Sherman v. Pub.
Utility Comm’n of Texas, 643 S.W.2d 681, 686 (Tex. 1983).
          Right of Judicial Review of Constitutional Issues
          Williams contends that (1) the Fund’s actions were beyond their constitutional
authority; (2) the Legislature unconstitutionally delegated governmental authority to
the Fund; (3) the Fund’s guidelines and PSC determinations were unconstitutional
retroactive applications of the law; (4) the Fund’s guidelines were an unconstitutional
local or special law; (5) the Fund’s guidelines and their application denied him equal
protection; and (6) the Fund’s and the trustees’ application of the Fund’s guidelines
to him violated substantive due process.
          Standing to challenge the constitutionality of a statute requires that the plaintiff
must have suffered some actual or threatened injury under the statute and that he
contend that the statute unconstitutionally restricts his own rights. Barshop v. Medina
County Underground Water Conservation Dist., 925 S.W. 2d 618, 626 (Tex. 1996).
Williams has pleaded that his rights have been unconstitutionally restricted and that
he has been injured by the Fund’s promulgation of its guidelines and by its PSC
determination.
          We hold that Williams has standing to bring his constitutional claims. We turn,
therefore, to the merits of those claims.
          Ultra Vires Administrative Decisions

          Williams argues that the trial court has jurisdiction because the trustees acted
ultra vires in establishing the guidelines for interpreting the retirement statute. Courts
generally do not interfere in an administrative agency’s duties and functions, but they
will intervene and give declaratory relief when the agency exercises authority beyond
its statutorily conferred powers. Nuchia v. Woodruff, 956 S.W.2d 612, 616 (Tex.
App.—Houston [14th Dist.] 1997, pet. denied); see City of Sherman, 643 S.W.2d at
683; see also Stauffer v. City of San Antonio, 344 S.W.2d 158, 160 (Tex. 1961).
          Williams alleges that the Fund “misconstrued” and “adopted rules inconsistent
with and in violation of” the former retirement statute’s section 30. Specifically, he
complains that the Fund improperly construed former section 30 to mean that, in order
to receive retirement credit, the cities from which he transferred had to have statutory
firemen’s retirement funds. Williams argues that (1) the former retirement statute gave
the trustees authority to construe the statute only for the “benefit of all members”;



(2) the guidelines harmed Williams and did not benefit any other fund member; (3) the
guidelines thus could not have been for the “benefit of all members”; and (4) the
trustees, therefore, acted outside their statutory authority. 
          Article 6243e.2(1) (like its predecessor) clearly gives the Fund the power to
adopt written rules and guidelines; to construe the retirement statute; to correct
defects, supply omissions, and reconcile inconsistencies; and to determine all
questions relating to eligibility for participation, service, benefits, and administration
of the Fund. Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(1), (2), (3), (5). In this
appeal, Williams does not challenge the fact that the Fund has, and has had, this
statutory authority. Regardless of his phrasing it in terms of “authority” to interpret
at all, the crux of Williams’s argument is that the trustees interpreted the statute in a
way they should not have.


 This is a complaint of “getting it wrong,” not of acting
outside statutory authority. See Tex. Educ. Agency v. Cypress-Fairbanks Indep. Sch.
Dist., 830 S.W.2d 88, 90-91 (Tex. 1992); Tex. Comm’n of Licensing & Regulation v.
Model Search Am., Inc., 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ);



N. Alamo Water Supply Corp. v. Tex. Dep’t of Health, 839 S.W.2d 455, 458-59 (Tex.
App.—Austin 1992, writ denied). 
          We hold that Williams’s summary judgment motion neither alleged nor proved
a true ultra vires ground. Accordingly, that ground could not fit within the ultra vires
exception to the rule that no right of judicial review of an agency decision lies absent
statutory authority. We overrule Williams’s ultra vires challenge.
Delegation of Governmental Authority

          Williams’s claim that the retirement statute unconstitutionally delegates
governmental power to the Fund likewise collapses, as briefed, into an argument about
the Fund’s interpretation of the statute, which is clearly within the Fund’s jurisdiction. 
See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(2) (conferring jurisdiction on
the Fund to “interpret and construe this article”). Accordingly, we overrule this issue.
See Tex. R. App. P. 38.1(h) (brief must contain clear and concise argument for
contention, with citations to authority).
          Retroactive Application of Statute

          Williams also contends that the Fund’s and the trustees’ interpretation of the
retirement statute denying him PSC credit represents an illegal and unconstitutional
retroactive application of law. The Fund construed the PSC provision of the
firefighter’s retirement-fund statute while Williams’s request for PSC was pending;
the Legislature subsequently repealed article 6243e.2, under which Williams’s claims
were brought, and which he contends supports his interpretation of his right to PSC,
and replaced the repealed statute with article 6243e.2(1), which codifies the Fund’s
interpretation of the PSC provision.
          The Texas Constitution provides, “No . . . retroactive law . . . shall be made.”
Tex. Const. art. I, § 16. This constitutional proscription is, however, limited to
“vested rights.” See Subaru, 84 S.W.3d at 219; City of Dallas v. Trammel, 101 S.W.2d
1009, 1014 (Tex. 1937). If a statute impairs or takes away vested rights, it may not be
made retroactive. Tex. Const. art. I, § 16; Merchants Fast Motor Lines, Inc. v.
Railroad Comm’n, 573 S.W.2d 502, 504 (Tex. 1978); Reames v. Police Officers’
Pension Bd. of City of Houston, 928 S.W.2d 628, 631(Tex. App.—Houston [14th
Dist.] 1996, no writ). Retroactive laws affecting vested rights that are legally
recognized or secured are invalid under Texas law. Barshop, 925 S.W.2d at 633. 
However, no one has a vested right merely in the continuance of present law in
relation to a particular subject; the Legislature may change laws so long as they do not
destroy or prevent the adequate enforcement of vested rights. Subaru, 84 S.W.3d at
219.
          Williams claims that the Fund (1) incorrectly interpreted former article
6243e.2’s PSC requirements and then (2) retroactively applied that incorrect
interpretation (which was subsequently codified in article 6243e.2(1)). However,
Williams had no vested right to a certain interpretation of the retirement statute, nor
did he have a vested right to receive PSC under the terms of former article 6243e.2. 
There was no constitutional bar to the Fund’s promulgating guidelines for construing
the retirement statute while Williams’s request for PSC was pending and applying that
interpretation to Williams’s claim for PSC; nor is there a constitutional bar to applying
the PSC provisions of current article 6243e.2(1) retroactively to Williams’s claims,
since he had no vested right to receive benefits under the (now repealed) retirement
statute when he filed his claim.
          It is well-established that “an employee who elects to participate in a statutory
pension plan does so ‘in contemplation of the reserved right of the Legislature to
amend or to repeal laws on which the pension systems are founded.’” Reames, 928
S.W.2d at 631-32 (quoting Trammell, 101 S.W.2d at 1012); Duckett v. Board of
Trustees, City of Houston Firemen’s Relief & Retirement Fund, 832 S.W.2d 438, 442
(Tex. App.—Houston [1st Dist.] 1992, writ denied). A participant in a statutory
pension plan does not have a vested right to receive currently unvested benefits; he has
merely an expectancy based on the anticipated continuance of existing law; and this
expectancy is subordinate to the right of the Legislature to abolish the pension system
or to diminish the benefits of pensioners thereunder. Trammell, 101 S.W.2d at 1014-16; see also Ex parte Abell, 613 S.W.2d 255, 261-62 (Tex. 1981); Bd. of Managers of
the Harris County Hosp. Dist. v. Pension Bd., 449 S.W.2d 33, 37 (Tex. 1969).



          Williams’s claim that the Fund and the trustees violated the constitution by
applying the guidelines for interpreting the retirement statute retroactively is without
merit. 
          We overrule this issue.
Special or Local Law
          Williams’s claim that the former retirement statute is an unconstitutional special
or local law collapses into a complaint about the Fund’s statutory construction in
denying him PSC, which, like his claim of unconstitutional delegation of
governmental authority, is a matter clearly within the Fund’s jurisdiction. See Tex.
Rev. Civ. Stat. Ann. art. 6243e.2(1), § 2(p)(1), (2), (3), (5). However, even if
properly presented, this claim is without merit. 
          The Texas Constitution prohibits the Texas Legislature from passing “any local
or special law . . [r]egulating the affairs of counties, cities, towns, wards or school
districts.” Tex. Const. art. III, § 56. A special law is, as Williams states, a law
limited to a particular class of persons distinguished by some characteristic other than
geography, while a local law is one limited to a specific geographic area of the state. 
Maple Run v. Monaghan, 931 S.W.2d 941, 945 (Tex. 1996). “‘The primary and
ultimate test of whether a law is general or special is whether there is a reasonable
basis for the classification made by the law, and whether the law operates equally on
all within the class.’” Maple Run, 931 S.W.2d at 945 (quoting Rodriguez v. Gonzales,
227 S.W.2d 791, 793 (Tex. 1950)).
          Former article 6243e.2, under which Williams brings his claims, is, like its
successor, article 6243e.2(1), one of a group of statutes promulgated pursuant to
article 16, section 67 of the Texas Constitution, which confers power on the Texas
Legislature to “enact general laws establishing systems and programs of retirement
and related disability and death benefits for public employees and officers.” Tex.
Const. art. 16, § 67. The classification made by the statute at issue in this case,
providing for the establishment and administration of a “Firefighters’ relief and
retirement fund in municipalities of at least 1,600,000 population,” as stated in its
caption, is reasonable in light of the series of statutes that make similar provision for
firefighters in the other population centers of the state, and it operates equally on all
members of the Fund in the same position. It is thus a constitutional general law, not
an unconstitutional special law, as Williams contends. See Bd. of Managers of Harris
County Hosp. Dist., 449 S.W.2d at 38 (act “relating to Municipal pension systems in
all cities of this state having a population in excess of nine hundred thousand
(900,000) inhabitants” was not unconstitutional local or special law, despite applying
only to Houston when passed).
          We overrule this issue.
          Equal Protection
          Williams also challenges the provisions for appeal of the retirement statute on
equal protection grounds. In his petition, he argues that the statute violates the federal
Equal Protection Clause


 because
[u]nder the statute, each firefighter’s right to appeal is dependent on
when he will be “eligible for retirement.” Consequently, some
firefighters will be able to appeal the same final decision, made at the
same time, by the same adjudicator many years before Williams could
appeal that same final decision. There is no legitimate state interest that
is furthered by classifying persons in a manner that gives some the right
to appeal months or even years before others could appeal the same final
decision entered on the same day by the same adjudicator.

(Emphasis in original; citations omitted.); see Lindsey v. Normet, 405 U.S. 56, 77, 92
S. Ct. 862, 876 (1972) (“When an appeal is afforded. . . it cannot be granted to some
litigants and capriciously or arbitrarily denied to others without violating the Equal
Protection Clause.”). 
          Williams’s argument is without merit. It fails to recognize the rational
distinction between (1) a statutory grant of the right of judicial review of agency
decisions regarding claims for vested benefits and (2) a statutory denial of the right of
appeal to persons who have no vested interest in receiving benefits. When, as here,
“the classification does not impinge on a fundamental right, or distinguish between
persons on a suspect basis such as race or national origin, it is valid as long as it is
rationally related to a legitimate state purpose.” Ford Motor Co. v. Sheldon, 22
S.W.3d 444, 451 (Tex. 2000). See Owens Corning v. Carter, 997 S.W.2d 560, 581
(Tex. 1999) (“[W]e must uphold the law if we can conceive of any rational basis for
the Legislature’s action.”). 
          Deferring judicial review until a firefighter actually seeks retirement benefits
prevents review that may be merely advisory or dependent upon future contingencies. 
See Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc., 971 S.W.2d
439, 442, 443 (Tex. 1998) (holding that ripeness is threshold issue that implicates
subject matter jurisdiction; it emphasizes need for concrete injury for presentation of
justiciable claim; and case is not ripe when its resolution depends on contingent or
hypothetical facts or on events that have not yet come to pass); Duckett, 832 S.W.2d
at 442 (holding that inchoate interest of beneficiary of Firemen’s Relief and
Retirement Fund does not ripen into property interest until occurrence of contingency
upon which that interest depends). This is a rational basis to uphold the law. 
          We overrule this issue.
          Substantive Due Process
          Williams further contends that “[s]ubstantive due process proscribes arbitrary
or capricious laws that adversely affect vested rights.” See City of Amarillo v.
Hancock, 239 S.W.2d 788, 791 (Tex. 1951) (holding that, for plaintiff to bring himself
within protection of due process claims, right adversely affected by action of
administrative body must be vested property right). Because we have held that, at the
time he brought his claims, Williams had no vested right to the contested pension
benefits under the retirement statute, his substantive due process argument necessarily
fails.
          We overrule this issue.
          Inherent Right of Judicial Review of Legal Issues
          The dissent would hold that the district court had inherent jurisdiction under
article V, section eight of the Texas Constitution to interpret “pure questions of law”
relative to the retirement statute, regardless of the Fund’s jurisdiction over legal
questions. It invokes the constitutional grant of original jurisdiction to the district
courts to determine questions of law, “except. . . where exclusive . . . jurisdiction may
be conferred by this Constitution or other law on some other court, tribunal, or
administrative body.” Tex. Const. art. V, § 8 (emphasis added).
          The dissent would hold that the retirement statute did not give the Fund
exclusive jurisdiction to interpret the retirement statute because the statute did not
include the term “exclusive”; therefore, the district court retained jurisdiction over the
legal questions Williams raises. To reach this conclusion, however, the dissent must
ignore the comprehensive statutory scheme from which all of Williams’s rights derive,
including the broad legislative grant of powers to the Fund to interpret and to construe
the statute; the broad grant of power to the Fund to determine all legal and factual
questions relating to eligibility for participation, service, and benefits or relating to the
administration of the Fund; and the legislative limitation on the statutory right of
review of Fund determinations. The dissent also ignores the purpose of the exclusive
jurisdiction doctrine, which is to require an aggrieved party to comply with statutory
provisions before the jurisdiction of the trial court attaches and to limit review of
administrative action. Subaru, 84 S.W.3d at 221. It is undisputed that Williams did
exhaust his administrative remedies; therefore, the real question here is the scope of
the right to seek judicial review of administrative decisions once administrative
remedies have been exhausted.
          The dissent’s expansive view of the inherent jurisdiction of district courts to
review agency actions, even in the absence of a statutory right of review or a
constitutional question, eviscerates the doctrine of exclusive agency jurisdiction and
the power of the Legislature to limit statutory review of administrative decisions. 
Even if an agency’s jurisdiction expressly includes the interpretation of legal and
factual issues, as here, persons aggrieved by agency action and lacking a statutory
right of review could always perform an end run around the agency by asserting the
inherent jurisdiction of the judicial system to interpret the law. This is not the law. 
See, e.g., Continental Cas. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 404
(Tex. 2000) (holding that, when Legislature remains silent or denies right of judicial
review, administrative decisions may nevertheless be attacked in court if they
adversely affect vested property right or otherwise violate provision of state or federal
constitution); Little-Tex, 39 S.W.3d at 599.



          The potential impact of the dissent’s expansive interpretation of district court
jurisdiction over questions of law becomes evident when the dissent asserts the
authority of the district court to reinstate and to interpret repealed law in a way that
contradicts the agency interpretation of that law, contradicts current law, and supports
Williams’s claims. By permitting the court (under the canon of inherent jurisdiction)
not only to second guess an administrative agency on matters within the agency’s
express jurisdiction, and as to which the governing statute expressly precludes judicial
review by persons with non-vested rights, the dissent would allow a participant in a
statutory pension plan to freeze non-vested rights in time and to subject them to
judicial enforcement. This view is contrary to long-established principles of law that
subject the expectations of statutory pension plan participants to the right of the
Legislature to repeal or amend the law and to decrease or eliminate non-vested
benefits. See Trammell, 101 S.W.2d 1014-16. Even more fundamentally, the dissent
would place the district courts in the untenable position of second-guessing the Fund’s
exercise of its statutorily conferred power to construe the statute and to promulgate
guidelines without the benefit of either the Fund’s expertise or its knowledge of how
the construction of one section of the retirement statute impacts the administration of
the Fund for the “greatest benefit of all members.” See Tex. Rev. Civ. Stat. Ann. art.
6243e.2(1), § 2(p)(3), (5).
          We, therefore, disagree with the dissent’s view that the district courts have
inherent jurisdiction over questions of law within the Fund’s jurisdiction to decide in
the absence of a statutory right of review or a constitutional issue.
Original District Court Jurisdiction
District Court Jurisdiction over Williams’s Claims Under the Texas Trust
Code

          Williams also argues that section 115.001(a) of the Texas Trust Code confers
both original and exclusive jurisdiction on the district courts “to decide all issues
concerning the [pension] Fund:
Except as provided by [a sub-section inapplicable here], a district court
has original and exclusive jurisdiction over all proceedings concerning
trusts, including proceedings to: (1) construe a trust instrument . . . .
Tex. Prop. Code Ann. § 115.001(a)(1) (Vernon Supp. 2003). He correctly observes
that the Trust Code applies generally to a pension trust. See id. § 121.003 (Vernon
1995); see also id., § 121.001(a) (Vernon 1995) (defining a pension trust). The Fund
and the trustees respond that section 115.001(a) cannot create subject matter
jurisdiction over Williams’s claims because that section “contains merely a general
grant of jurisdiction for actions involving trusts [but not] . . . language suggesting a
legislative intent to waive sovereign immunity for public pension funds.” Assuming
without deciding that the Trust Code applies to Williams’s claims, we agree with the
Fund.
          “Absent specific legislative authorization, persons aggrieved by an
administrative agency’s action have no recourse in the courts due to the first principle
of governmental immunity—the state as sovereign cannot be sued without its
permission. The doctrine bars a suit for judicial review against the state unless the
state has expressly given its consent to be sued.” Southwest Airlines Co. v. Tex. High-Speed Rail Auth., 867 S.W.2d 154, 157 (Tex. App.—Austin 1993, writ denied)
(citations omitted). Waiver of sovereign immunity from suit must be clear and
unambiguous. See, e.g., Fed. Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex.
1997). The general language of section 115.001(a) of the Trust Code does not provide
the necessary waiver of sovereign immunity from suit.
          We overrule this issue.
          District Court Jurisdiction over Williams’s Common Law Claims
          Finally, Williams argues that he is entitled to bring common law claims against
the trustees for conspiracy, fraud, breach of fiduciary duty and breach of the duty of
good faith and fair dealing arising in connection with their interpretation and
application of the retirement statute. The trustees respond that they are immune from
such claims.



          Governmental immunity from suit bars an action against the state unless the
state expressly consents to the suit. Texas Dep’t of Transp. v. Jones, 8 S.W.3d
636,638 (Tex. 1999). A party suing a governmental entity must establish the state’s
consent, by reference either to a statute or to express legislative permission. Id. 
Absent such consent, a trial court lacks subject matter jurisdiction. Id. Here, there
was no consent to suit by the state. Therefore, the district court lacked subject matter
jurisdiction over Williams’s common law claims against the Fund, a state agency. 
Public officials, however, enjoy more limited immunity.
          Public officials are entitled to official immunity from personal liability in
performing (1) discretionary duties (2) in good faith (3) within the scope of their
authority. Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994). If public officials are
immune from suit, they are not personally liable to the claimant under Texas law. 
City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994). The rationale for
official immunity is that the public suffers if government officers, who must exercise
judgment and discretion in their jobs, are subject to civil lawsuits that second-guess
their decisions. Id. “‘If an action involves personal deliberation, decision and
judgment, it is discretionary.’” Kassen, 887 S.W.2d at 9 (quoting City of Lancaster,
883 S.W.2d at 654).
          The trustees’ interpretation of the retirement statute, their promulgation of
guidelines, their administration of the Fund, and their denial of Williams’s claim for
PSC—the actions that Williams alleges give rise to his common law claims—are all
acts requiring deliberation, decision, and judgment within the scope of the trustees’
authority under the retirement statute. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1),
§§ 2(j), 2(p), 12(a). The only question, therefore, is whether the trustees’ exercise of
discretion was made in “good faith.”
          The test for good faith is one of objective legal reasonableness, without regard
to whether the government official acted with subjective good faith. City of
Lancaster, 883 S.W.2d at 656. To determine objective legal reasonableness, the courts
“look to whether a reasonable official could have believed his or her conduct to be
lawful in light of clearly established law and the information possessed by the official
at the time the conduct occurred.” Id. Good faith immunity applies even if the official
misinterprets or violates the law or incorrectly adjudicates a claim. See Campbell v.
Jones, 264 S.W.2d 425, 427 (Tex. 1954). 
          Williams’s argument that the trustees did not act in good faith derives solely
from his contentions that the trustees misconstrued the statute and that “no reasonable
person could have believed it was lawful to deny Williams PSC for the reason he was
denied PSC, or that it was reasonable to misleadingly tell him he could not transfer
PSC.” The trustees testified by affidavit that they believed their conduct to be lawful
in light of the powers conferred on them by the retirement statute to adopt guidelines
for the administration of the fund, “to participate in the Board’s exercise of its
functions, which include administering the Fund, construing the act, and determining
all questions relating to eligibility for participation,” and to “participate in the Board’s
adjudication of the prior service credit application.” This belief was clearly
reasonable, given the jurisdiction expressly conveyed to the board by statute. See Tex.
Rev. Civ. Stat. Ann. art. 6243e.2, §§ 2(j), 2(p)(1), (2), (3), (5). Therefore, the
trustees are entitled to official immunity.
          The dissent, by contrast, would hold that, to prove the objective “good faith”
element of official immunity, the trustees had to prove that the thought processes
underlying their interpretation of the statute were “objectively reasonable,” given
“Williams’s allegations that the trustees had purposefully changed their interpretation
for the sole and improper purpose of defeating pending PSC requests.” The dissent
would thus make statutory appointees vested with the power of interpreting and
administering statutes personally liable for getting the interpretation wrong unless
they prove that their motives are pure.
          The dissent misconstrues the standard of proof of objective good faith, namely,
“whether a reasonable official could have believed his or her conduct to be lawful.” 
City of Lancaster, 883 S.W.2d at 656. The officials’ affidavits conform exactly to the
standard of proof. Instead, the dissent would place a burden on officials to publicly
justify their reasoning that can be nothing other than a public confession of the
officials’ thought processes, establishing a subjective standard of proof of good faith
that has been expressly rejected by the Texas Supreme Court. Id. Such a standard
would also undermine the rationale for official immunity, i.e., that the public suffers
if government officers whose duties include exercising judgment and discretion are
subjected to civil lawsuits that second-guess their decisions. Id. at 658. We therefore
disagree with the dissent’s analysis of this issue.
          We hold that the trustees are entitled to official immunity with respect to
Williams’s common law claims against them. We overrule this issue.



 
SUMMARY JUDGMENT FOR THE CITY
          Williams asserted only his common law claims (conspiracy, fiduciary-duty
breach, good-faith-and-fair-dealing breach, and fraudulent misrepresentation and
concealment) against the City, two of whose employees are designated by the
retirement statute to sit on the Fund’s board. The trial court granted the City’s motion
to dismiss or, alternatively, for rule 166a(c) summary judgment on those claims.
          A municipality, as a political subdivision of the state, is not liable for the acts
of its officers or employees committed in the course of performing governmental
functions unless the municipality’s common law immunity is waived by the Texas Tort
Claims Act (“TTCA”).


 City of Lancaster, 883 S.W.2d at 658. The relevant
provision of the TTCA waives the sovereign immunity of municipalities for
governmental functions only as to (1) “property damage, personal injury, and death
proximately caused by the wrongful act or omission or the negligence of an employee
acting within the scope of employment” if (2) the damage, injury, or death arises from
the operation or use of a motor vehicle or motor-driven equipment and (3) “the
employee would be personally liable to the claimant according to Texas law.” Id. §
101.021 (Vernon Supp. 2003). The TTCA does not waive the City’s immunity to the
type of common law claims asserted by Williams. See Thayer v. Houston Mun.
Employees Pension Sys., 95 S.W.3d 573, 576-77 (Tex. App.—Houston [1st Dist.]
2002, no pet.) (holding that municipal pension system and board, as state-created
governmental entities, are generally immune from tort liability). Therefore, the City
is immune from judgment on Williams’s common law claims, assuming that those
claims challenge its governmental functions.
          Governmental functions of a municipality are those that are “enjoined on a
municipality by law and are given it by the state as part of the state’s sovereignty, to
be exercised by the municipality in the interest of the general public. . . .” Tex. Civ.
Prac. & Rem. Code Ann. § 101.0215(a) (Vernon Supp. 2003). Williams concedes
in his petition that the provision under which he seeks PSC was created by statute,
specifically former article 6243e.2, which he acknowledges was superseded by article
6243e.2(1) in November 1997. He further acknowledges that, although the Fund is
independent of both the City and the Houston Fire Department, its governing board
of trustees, by statute, includes the City’s mayor or his representative and the City’s
treasurer; that the amount of contributions from members and from the City financing
the Fund is mandated by statute; and that the terms under which firefighters’ pensions
vest and PSC is determined are likewise mandated by statute. See Tex. Rev. Civ.
Stat. Ann. art. 6243e.2(1), §§ 2(b)(1), (2); 4; 13(c), (d); 16. The retirement statute,
in turn, is promulgated pursuant to the Texas Constitution. Tex. Const. art. XVI, §
67(a) ( providing for the enactment of “general laws establishing systems and
programs of retirement and related disability and death benefits for public employees
and officers”).
            The administration of the Fund and the promulgation and interpretation of the
guidelines for its administration are thus expressly “enjoined” on the City by statute; 
and these powers are given to the Fund as part of the sovereignty of the state, by
legislative authority, to be exercised by the board of trustees and the City for the
general benefit of all who fall within the scope of the statute. They are thus
governmental functions. See Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a). The
City is, therefore, entitled to governmental immunity from suit on Williams’s common
law claims.
          Williams, however, argues that the actions he complains about are proprietary
functions of the City, rather than governmental functions. See Herschbach, 883
S.W.2d at 730 (“An exception to the general rule of governmental immunity is that a
municipality is not immune from its proprietary functions.”). Proprietary functions
are those “that a municipality may, in its discretion, perform in the interest of the
inhabitants of the municipality.” See Tex. Civ. Prac. & Rem. Code Ann. §
101.0215(b) (Vernon Supp. 2003). Williams cites to cases which he contends support
his argument that the interpretation and administration of a statutorily created pension
fund are proprietary functions of the City, for which the City and those trustees who
are City employees are not immune, namely, Herschbach and City of Dallas v. Arnett,
762 S.W.2d 942 (Tex. App.—Dallas 1989, writ denied).



 
          In Arnett, the Dallas Court of Appeals addressed the question of whether the
operation of a police and fire fighter’s pension fund was a governmental or proprietary
function of the municipality. See id., 762 S.W.2d 942. Analogizing from the
provision of health insurance to municipal employees, the court held that the provision
of pension benefits was a proprietary function. Id. at 953. We believe that Arnett was
wrongly decided for two reasons. First, the court based its conclusion on “the closely
analogous function of providing health insurance to municipal employees” by a self-insured municipality, which the Texas Supreme Court had designated a proprietary
function in Gates v. City of Dallas, 704 S.W.2d 737, 739 (Tex. 1986). Arnett, 762
S.W.2d at 953. In the context of indicia of proprietary versus governmental functions,
the analogy drawn in Arnett is false. There is no statutory “enjoinder” that a self-insured municipality provide health benefits to municipal employees, while there is
an express statutory obligation under article 6243e.2(1) for the City to manage the
Fund for the benefit of firefighters. See Tex. Rev. Civ. Stat. Ann. art. 6243e.2(1),
§§ 2(p) 3, 5. Second, although the Arnett court recognized that “a number of
administrative and financial interconnections exist between the City and the Fund”
under the governing statute, article 6243a, the court failed to consider the statutory
origins of the city’s power to administer the fund and thus failed to address either
governmental immunity in general or the TTCA’s limited waiver of immunity.
          In Herschbach, the Corpus Christi Court of Appeals wrestled with the issue of
whether the City of Corpus Christi’s calculation of the average monthly salary of
firefighters was a governmental function or a proprietary function subject to tort and
breach-of-contract claims. See id., 883 S.W.2d 720. The court observed that section
10A-3 of the relevant statute, article 6243e, was optional in its coverage (it applied to
all cities “which adopt the provisions of this section”). Id. at 731 (emphasis added).
Based on that conclusion, the court held that “the state did not enjoin section 10A-3
upon the City; [the statutory language] lacks the elements of command necessary for
enjoining a function on a municipality.” Id. at 731.
          Article 6243e.2(1) is distinguishable from the statute at issue in Herschbach in
that article 6243e.2(1) has no optionality provision. Nevertheless, we disagree with
the holdings in Arnett and Herschbach that a municipality’s exercise of statutorily
prescribed functions with respect to a statutory pension plan is a propriety function of
the municipality. Such a construction not only contradicts the definition of 
governmental functions, but is absurd when (1) the result is to hold a municipality
liable in tort for the exact same acts of statutory interpretation and administration for
which the statutorily created board in which it participates in interpreting and
administering a statutorily created pension fund under the exact same statute enjoys
sovereign immunity and (2) a further result is to hold two of the members of a
statutorily created board personally liable in tort for the exact same actions in their
statutorily enjoined capacity as the municipality’s representatives on the board of
trustees for which they and the other trustees enjoy official immunity under the exact
same statute in their exact same capacity as Fund trustees. Courts should not read a
statute—here, the TTCA—in such a way as to create an absurd result. Barshop, 925
S.W.2d at 629; Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex. 1987); Mueller
v. Beamalloy, Inc., 994 S.W.2d 855, 860 (Tex. App.—Houston [1st Dist.] 1999, no
pet.).
          We overrule Williams’s challenges to the dismissal of his claims against the
City. 
REMEDY
          Although we overrule Williams’s issues, there is jurisdictional error requiring
modification. Because the trial court properly determined that it had no subject matter
jurisdiction over certain of Williams’s claims—an issue that the court would have had
to reach before determining the merits—it erred in rendering a take-nothing judgment
on them, rather than dismissing those claims without prejudice. See Functional
Restoration Assocs., 19 S.W.3d at 406; see also Bell v. State Dep’t of Highways &
Pub. Transp., 945 S.W.2d 292, 295 (Tex. App.—Houston [1st Dist.] 1997, writ
denied). A court may not rule on the merits of claims over which it has no
jurisdiction. Accordingly, we modify the judgment to reflect dismissal of Williams’s
statutory and common law claims against the Fund, the trustees, and the City for lack
of subject matter jurisdiction. See Tex. R. App. P. 43.2(b). 
CONCLUSION
          We modify the judgment rendered on Williams’s statutory and common law
claims against the Fund, the trustees (in either capacity), and the City to dismiss those
claims without prejudice for lack of subject matter jurisdiction. We affirm the
judgment as so modified.
 
Evelyn V. Keyes
Justice
 

Panel on rehearing consists of Justices Hedges, Taft, and Keyes.

Justice Taft, concurring in part and dissenting in part.

Justice Cohen, who was a member of the panel on original submission in this cause
and who retired before this opinion’s issuance, not participating on rehearing.